UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **SANDRA B. BLANCHE** | * | **CIVIL ACTION NO.  13-2657** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice**.**

**Background & Procedural History**

Sandra B. Blanche protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on October 17, 2011. (Tr. 94-101, 114).  She alleged disability as of August 24, 2011, because of depression.  (Tr. 118).  The state agency denied the claims at the initial stage of the administrative process.  (Tr. 48-69).  Thereafter, Blanche requested and received a May 15, 2012, hearing before an Administrative Law Judge ("ALJ").  (Tr. 28-47).  In a July 5, 2012, written decision, however, the ALJ determined that Blanche was not disabled under the Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to other work that exists in substantial numbers in the national economy.  (Tr. 12-23).  Blanche appealed the adverse

decision to the Appeals Council. On June 8, 2013, however, the Appeals Council denied Blanche's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 4-7).

On September 13, 2013, Blanche sought review before this court.[1] She alleges the following errors,

(1) the ALJ's residual functional capacity assessment is not supported by substantial evidence because the consultative psychologist only spent 30 minutes with the claimant and talked on the phone with his wife during the interview; and

(2) the ALJ violated the claimant's rights because he did not permit her to speak, or otherwise to represent herself at the hearing.

### **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's

---

[1] On August 31, 2013, the Appeals Council granted Blanche a 45 day extension of time to file a civil action. (Tr. 1-2).

determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)  An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)  An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)   An individual whose impairment(s) meets or equals a listed impairment in

> [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See Boyd v. Apfel, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## The ALJ's Findings

I. Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that Blanche did not engage in substantial gainful activity during the relevant period. (Tr. 17). At step two, he found that she suffers from the severe impairment of depression. *Id.*[2] He concluded, however, that the impairment was not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 18-19).

---

[2] The ALJ determined that Blanche's complaint of arm pain was not a medically determinable impairment. (Tr. 17-18).

II.     Residual Functional Capacity

The ALJ next determined that Blanche retained the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, but with the following non-exertional limitations: she can understand, retain, and follow but simple instructions involving at least two steps; she can sustain attention and work at a reasonable pace for up to two-hour blocks of time when performing simple and routine work-related tasks; she does not require an inordinate level of supervision when performing simple and routine tasks; she is expected to have difficulty interacting with the general public and is resistant to authority; however, she can tolerate supervision and interaction with co-workers if such interactions are not prolonged or frequent; and she would perform best in standardized work environments with minimal variation. (Tr. 19).

III.    Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that Blanche was unable to return to her past relevant work. (Tr. 21-22). Accordingly, he proceeded to step five. At this step, the ALJ determined that, as of the alleged disability onset date, Blanche was a younger individual, with a high school education and the ability to communicate in English. *Id*. Transferability of skills was not material. *Id*. He then observed that given Blanche's vocational factors, and if she had an RFC that did not include any non-exertional limitations, then the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 416.969; Rule 204.00. *Id*. However, because Blanche's RFC *did* include nonexertional limitations, the ALJ consulted a vocational expert ("VE") to determine whether, and to what extent her additional limitations eroded the occupational base for unskilled work at all exertional levels. (Tr. 22-23). In response, the VE identified the representative jobs of price marker - light, *Dictionary of Occupational Titles* ("DOT") Code # 209.587-034; and housekeeper - light, DOT

Code # 232.687-014 that were consistent with the ALJ's RFC and Blanche's vocational profile. *Id*.[3]

## Analysis

In this case, the ALJ considered plaintiff's medical and disability records, the hearing testimony, and the findings of the consultative and the non-examining psychologists. In deriving plaintiff's RFC, the ALJ tracked the findings of the non-examining agency psychologist, Linda Hartwell, Ph.D., who, in turn, premised her opinion on the report of the consultative psychologist, D.L. Moore, Ph.D. *See* Tr. 55-56. Of course, "an ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and *do not contradict those of the examining physician*." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991) (quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)) (emphasis added). Here, Dr. Hartwell's assessment is consistent with Dr. Moore's findings.[4] Together, the opinions of the two psychologists provide substantial support for the

---

[3] The VE testified that for the price marker job, there were 468,190 positions nationally and 5,610 jobs regionally. (Tr. 22, 39-40). For the housekeeper job, there were 221,305 jobs nationally and 3,713 such jobs regionally. *Id*. This incidence of jobs constitutes a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

[4] At the request of the state agency, Blanche underwent a February 22, 2012, psychological evaluation administered by Dr. Moore. (Tr. 220-224). She arrived on time for the interview, and entered the room in no apparent anxiety. *Id*. Her hygiene and grooming were excellent. *Id*. She listed the following problems: frequently feeling sad, inability to sleep, often appearing nervous and shaky, worrying all of the time, repeatedly checking things, aversion to being around people, inability to get along with others, frequent difficulties at the workplace, identity problems, afraid too much, racing thoughts, fear of crowds, and hopelessness. *Id*.
 Upon examination, however, Blanche followed all commands appropriately; her speech was complex, spontaneous, logical, and well-articulated. *Id*. Her fund of information was good, as was her concentration/attention, and memory. *Id*. Although she wept throughout most of the interview, her cooperation and pace were good. *Id*. Her prognosis was fair to good with

ALJ's RFC, and subsequent step five determination.

Plaintiff contends, in effect, that the psychological evaluation administered by Dr. Moore is invalid because it purportedly lasted only 30 minutes, during which time Moore talked to his wife on the telephone. Although the record contains a comment by Blanche that she thought Dr. Moore had more problems than she did, Tr. 141, there is no indication that Blanche raised her concerns regarding the validity of the consultative examination with the ALJ. Consequently, based on the existing administrative record,[5] the court is compelled to find that the ALJ permissibly relied upon Dr. Moore's report.

Relatedly, plaintiff contends that the ALJ did not permit her to speak, and thereby violated her right to represent herself. The court observes that when a claimant is unrepresented at the hearing, the ALJ's obligation to fully and fairly develop the record gives rise to a special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (citations omitted). The ALJ's failure to develop an adequate record does not automatically compel reversal. *Id*. Rather, "[a]s in the case of a hearing held without waiver of the right to counsel, the claimant must, in addition, show that she was prejudiced as a result of [sic] scanty hearing. She must show that,

---

treatment/compliance. *Id*. Moore estimated that her cognitive ability was in the low average range. *Id*. Her allegations of depression were credible. *Id*. Moore diagnosed, *inter alia*, major depressive disorder, chronic. *Id*. He concluded that Blanche should experience no significant difficulty following multi-stage directions. *Id*. However, he anticipated some problems in adjusting to worksite stress. *Id*. Moreover, her instability of mood may make it difficult for her to form stable relationships with others. *Id*. Learning new tasks should produce no significant challenge, as her intelligence was probably adequate. *Id*. Moore considered her ability to maintain an adequately productive pace to be good. *Id*.

[5] The court emphasizes that the instant review of the Commissioner's decision is not *de novo*; the Commissioner's findings of fact are conclusive if supported by substantial evidence. *Mathews v. Eldridge*, 424 U.S. 319, 339, 96 S.Ct. 893, 905 n21 (1976).

had the ALJ done his duty, she could and would have adduced evidence that might have altered the result." *Kane supra* (internal

Here, the hearing transcript does not support plaintiff's contentions. (Tr. 28-47). Instead, it is plain that the ALJ inquired about plaintiff's impairments and their effects. In fact, he even asked plaintiff to explain her left arm pain. (Tr. 38).[6] He also asked her what her most serious medical problem was, and permitted her to submit a letter describing her condition. (Tr. 44-45). Moreover, the ALJ left the record open to permit plaintiff to submit records from her treating psychiatrist, Dr. Gullipalli. (Tr. 45-46). Insofar as plaintiff contends that the hearing was prejudicially brief, the brevity of a hearing does not alone establish that the ALJ breached his duty to develop the record. *See James v. Bowen*, 793 F.2d 702 (5th Cir. 1986) (ten minute hearing not inadequate). Moreover, in this case, the hearing lasted 25 minutes.

Finally, in addition to an award of benefits, plaintiff seeks $28,000 as compensation for her pain and suffering stemming from the wrongful denial of benefits. Congress, however, made no provision for consequential damages arising from unconstitutional deprivations of the statutory rights enshrined in the Social Security Act. *Schweiker v. Chilicky*, 487 U.S. 412, 426, 108 S. Ct. 2460, 2469 (1988). Thus, plaintiff is not entitled to monetary damages for pain and

---

[6] The ALJ noted in his decision that plaintiff complained of arm pain, but there was no evidence of treatment or etiology. (Tr. 18). He further noted that on April 5, 2012, Blanche was diagnosed with left shoulder pain, but evaluation was negative. (Tr. 192-193). Accordingly, the ALJ concluded that her arm pain was not a medically determinable impairment. *See* Tr. 17-18; 20 C.F.R. §§ 404.1508 & 416.908. The ALJ's finding is consistent with Blanche's testimony that nobody knew what to do about her arm. *See* Tr. 35; *see also* 20 C.F.R. § 404.153 (evidence from acceptable medical source is needed to establish a medically determinable impairment). To the extent that plaintiff contends that the ALJ erred by failing to obtain further medical consultations, she has not demonstrated resulting prejudice. *See Hyde v. Astrue*, Docket No. 07-30748 (5th Cir. May 12, 2008) (unpubl.) (to establish prejudice, something more is required than an unsupported assertion that other tests or testimony might have made a difference) (unpubl.).

suffering.  *Id*.

## Conclusion

The ALJ in this case was tasked with determining whether the claimant was disabled.  In so doing, he considered the hearing testimony, the medical records, and expert opinion evidence.  The evidence was not necessarily uniform, and according to plaintiff, should have compelled a different result.  However, conflicts in the evidence are for the Commissioner to resolve.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted).  This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*,  209 F.3d 448 (5th Cir. 2000).

Upon review of the record, the undersigned finds that the Commissioner's determination that Blanche was not disabled under the Social Security Act is supported by substantial evidence and remains free of legal error.  Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 25th day of July 2014.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE